UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

FILED
ASHEVILLE, N.C.
JUN 06 2017
U.S. DISTRICT COURT
W. DIST. OF N.C.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 1:17-cr-73-RLV-DLH |
| | ) | |
| | ) | **BILL OF INDICTMENT** |
| v. | ) | |
| | ) | Violations: |
| | ) | |
| DAVID R. PAYNE | ) | 18 U.S.C. § 1014 |
| | ) | 18 U.S.C. § 1344 |

**THE GRAND JURY CHARGES:**

## I. Introductory Paragraphs

1. On multiple occasions throughout the year 2009, the defendant, DAVID R. PAYNE, executed a scheme to defraud financial institutions located within the Western District of North Carolina, including Pisgah Community Bank ("PCB"), Mountain First Bank & Trust ("MFBT"), and Bank of Asheville ("BOA") (collectively, "the Banks").

2. PAYNE defrauded the Banks by making material misrepresentations regarding his financial condition in connection with a series of loan applications, some of which were made by PAYNE in his personal capacity and some of which were made by corporate entities he controlled. In at least one instance, PAYNE also made material misrepresentations regarding the prior encumbrance of the real property that he offered as collateral for the loan.

3. PAYNE's misrepresentations enabled PAYNE and the corporate entities he controlled to secure approximately $1,607,000 in loan proceeds from the Banks. The false information that PAYNE provided to the Banks was material to their decisions to make the loans and to disburse the loan proceeds to PAYNE.

## II. Individuals and Entities

4. At all times relevant to the charges contained herein, the defendant, DAVID R. PAYNE, was an attorney licensed in the State of North Carolina. PAYNE owned and operated the law firm David R. Payne, PA, which was located in Asheville, North Carolina.

5. At all times relevant to the charges contained herein, Provision 08, LLC, was a North Carolina limited liability company with a registered address in Asheville, North Carolina. PAYNE was the managing member and sole owner of Provision 08, LLC.

6. At all times relevant to the charges contained herein, Shire Properties, LLC, was a North Carolina limited liability company with a registered address in Asheville, North Carolina. PAYNE was the sole member of Shire Properties, LLC.

7. At all times relevant to the charges contained herein, Mountain Mortgage, Inc., was a North Carolina business corporation with a registered address in Asheville, North Carolina. S.R., an associate of PAYNE, operated Mountain Mortgage, Inc., as a mortgage lending company, including as described in Paragraph 50(a).

8. At all times relevant to the charges contained herein, G.G. was a Certified Public Accountant who occasionally performed professional services for PAYNE and PAYNE's business entities, including as described in Paragraph 23.

9. At all times relevant to the charges contained herein, J.P. and K.J. were private investors who made a loan to PAYNE that was secured by certain real estate, as described in Paragraph 50(b).

10. At all times relevant to the charges contained herein, PCB was a financial institution located in Asheville, North Carolina, the deposits of which were insured by the Federal Deposit Insurance Corporation.

11. At all times relevant to the charges contained herein, MFBT was a financial institution located in Hendersonville, North Carolina, the deposits of which were insured by the Federal Deposit Insurance Corporation.

12. At all times relevant to the charges contained herein, BOA was a financial institution located in Asheville, North Carolina, the deposits of which were insured by the Federal Deposit Insurance Corporation.

## III. PAYNE's True Financial Condition

### A. The NC4Cs Debt

13. On or about February 1, 2007, PAYNE, acting in his personal capacity, executed a pair of promissory notes to NC Four C's, LLC ("NC4Cs"), which was a North Carolina limited liability company, in exchange for NC4Cs's disbursement of loan proceeds to PAYNE. These private loans were for $500,000 and $300,000.

14. PAYNE agreed to make monthly payments to NC4Cs totaling approximately $7,943.61 on the $500,000 loan, consisting of a $5,443.61 monthly payment and a $2,500 monthly fee. NC4Cs later agreed to waive the monthly fee, thereby reducing PAYNE's monthly obligation on the $500,000 loan to approximately $5,443.61.

15. PAYNE agreed to make monthly payments to NC4Cs totaling approximately $6,181.13 on the $300,000 loan, consisting of a $4,681.13 monthly payment and a $1,500 monthly fee.

16. PAYNE ceased making payments to NC4Cs during 2009, when he began to have serious financial problems. At that point, PAYNE had made one principal reduction payment, with the rest of his payments going towards interest.

17. During the entirety of 2009, PAYNE was therefore personally indebted to NC4Cs in an amount close to $800,000.

**B. The J.E. Debt**

18. On or about December 22, 2008, PAYNE, acting through his wholly-owned corporate entity Provision 08, LLC, entered into a written and signed transfer agreement with an individual referred to herein as J.E. (the "Transfer Agreement"). Prior to entering into the Transfer Agreement, PAYNE had acted as an attorney for J.E., and for J.E.'s charitable and business enterprises, on numerous occasions.

19. Pursuant to the terms of the Transfer Agreement, J.E. agreed to transfer to PAYNE three properties owned by J.E. and one property owned by a family partnership jointly controlled by J.E. and J.E.'s spouse. The four properties that J.E. transferred to PAYNE are referred to herein as Lot 4, Tract 3, Lot 77, and Lot 82 (collectively, "the Properties").

20. As consideration for the transfer of the Properties, PAYNE agreed to pay to J.E. and J.E.'s heirs the sum of $4.38 million dollars.

21. PAYNE further agreed to commence installment payments on his debt within 60 days of the transfer of the Properties. PAYNE agreed to pay $24,500 per month for the first seven years and $31,308.92 per month for the following twenty-three years.

22. PAYNE further agreed to sign, or to cause to be signed, "springing deeds of trust" on the Properties, which would be recorded if PAYNE failed to make the required payments to J.E. and J.E.'s heirs.

23. Pursuant to the terms of the Transfer Agreement, G.G., who was a CPA and an associate of PAYNE, would hold the "springing deeds of trust" in escrow for delivery to J.E. and/or the heirs of J.E. in the event of non-payment by PAYNE.

24. Neither PAYNE, nor his corporate entity Provision 08, LLC, ever made a single payment to J.E. or the heirs of J.E. in exchange for the transfer of the Properties.

25. Furthermore, neither PAYNE, nor his corporate entity Provision 08, LLC, timely signed or caused to be signed the "springing deeds of trust" required by the Transfer Agreement, such that J.E. or the heirs of J.E. could take fruitful action to foreclose on the Properties in response to PAYNE's non-payment. Because of PAYNE's delay, no deeds of trust were recorded in favor of J.E. until on or about June 22, 2010. By that time, PAYNE had repeatedly encumbered the Properties by using them as collateral for multiple loans.

26. Throughout the entirety of 2009, PAYNE, through his wholly-owned corporate entity Provision 08, LLC, therefore owed a debt to J.E. and J.E.'s heirs of approximately $4.38 million.

Moreover, as soon as PAYNE missed the first required payment, PAYNE owned the Properties subject to J.E.'s right to record the "springing deeds of trust," which PAYNE was obligated by the Transfer Agreement to deliver.

## IV. Misrepresentations and Omissions

27. Soon after PAYNE acquired the Properties from J.E., he began to use the Properties to secure loans to the benefit of himself and his corporate entities.

28. In securing those loans, from PCB, MFBT, and BOA, PAYNE made numerous material misrepresentations and omissions, all with the intent to defraud the Banks.

### A. Pisgah Community Bank Loans

29. PAYNE executed a scheme and artifice to defraud PCB by means of material false and fraudulent pretenses, representations, omissions, and promises on at least two separate occasions.

#### 1. January 20, 2009, Loan to Shire Properties for $735,000

30. In late December 2008 and early January 2009, PAYNE engaged in a dialogue with a PCB loan officer, D.S., regarding PAYNE's desire to obtain a $735,000 loan for another one of his corporate entities, Shire Properties, LLC. PAYNE eventually closed the loan on or about January 20, 2009. PAYNE's law firm, David R. Payne, PA, served as closing attorney for the loan.

31. PAYNE sought the loan to refinance a property PAYNE owned, which was located on Ravenscroft Drive, Asheville, North Carolina, but PCB was not satisfied with the Ravenscroft property as collateral and sought additional security.

32. In an email PAYNE sent to D.S. on January 6, 2009, PAYNE informed PCB of his acquisition of the Properties without mentioning any of the critical terms of the Transfer Agreement: "I have received title to 4.2 million dollars['] worth of property. This is unencumbered property and in the name of Provision 08, LLC, a company solely owned by me."

33. D.S. responded by asking how PAYNE had acquired the Properties totally unencumbered, and PAYNE misrepresented to D.S. that the Properties were a gift in recognition of previous services provided to J.E.: "I had worked and earned [J.E.] a lot of money. He gave me my first lot[,] which is what I am using as additional collateral for this loan[,] and then he gave me additional properties recently."

34. PAYNE's statements to D.S. regarding the Properties were false. In truth and fact, the Properties were not a gift, either in recognition of prior legal services rendered or otherwise, but were instead transferred to PAYNE in exchange for valuable consideration—approximately $4.38 million—that, it ultimately turned out, PAYNE would never pay.

35. PAYNE also provided personal financial information regarding himself and his business entities to D.S. and PCB as a part of the loan application process. This information contained numerous material misrepresentations and omissions. For example:

a. PAYNE listed the Properties as assets in the "Real Estate" category, but did not reveal the corresponding $4.38 million debt as a liability.

b. PAYNE did not disclose his approximately $800,000 personal debt to NC4Cs.

c. PAYNE represented his total liabilities to be $641,000, when in fact his liabilities were much more substantial.

These misrepresentations and omissions falsely conveyed to the bank an inflated representation of PAYNE's financial strength and ability to repay the loan.

36. PCB approved the loan, which used Lot 4 of the Properties as partial collateral, on or about January 20, 2009, and in reliance on PAYNE's misrepresentation of his financial condition. PAYNE's false statements were material to PCB's decision to approve and disburse the January 20, 2009, loan.

37. PAYNE intended to defraud PCB in connection with the January 20, 2009, loan by materially misrepresenting his financial condition.

### 2. June 22, 2009, Loans to PAYNE for $100,000

38. On or about June 22, 2009, PAYNE, acting through his law firm, David R. Payne, PA, obtained a $50k term loan and a $50k line of credit from PCB to finance his new law office. The loan was secured by a lien on the assets of the law firm David R. Payne, PA, and by the liens previously placed on certain properties in connection with the January 20, 2009, loan from PCB to PAYNE described in paragraphs 30 through 37.

39. PCB relied upon the same financial information that PAYNE provided in connection with the January 20, 2009, loan to Shire Properties, LLC, for $735,000. Again, the financial information upon which PCB relied contained numerous material misrepresentations, as described in Paragraph 35. PCB also continued to rely on PAYNE's prior misrepresentations about how he acquired the Properties "unencumbered," as described in paragraphs 32 through 34. PAYNE did not correct these material misrepresentations when applying for the new loan.

40. PAYNE knew that PCB was not aware of the missing $5 million-plus in debt when it approved his application in connection with the June 22, 2009, loans, because PAYNE had failed to disclose it to PCB in connection with his application for the January 20, 2009, loan.

41. In addition, PAYNE failed to disclose as a liability a $250,000 loan he had taken out from MFBT approximately one month prior to securing the June 22, 2009, PCB loans. That loan was also secured by one of the Properties (Tract 3), as discussed in Paragraphs 44 through 48.

42. PAYNE's false statements and omissions to PCB were material to PCB's decision to approve and disburse the June 22, 2009, loans.

43. PAYNE intended to defraud PCB in connection with the June 22, 2009, loans by materially misrepresenting his financial condition.

### B. Mountain First Bank & Trust Loan

44. On or about May 22, 2009, PAYNE, borrowing through his corporate entity Provision 08, LLC, used Tract 3 of the Properties as collateral to secure a $250,000 loan from MFBT. PAYNE's law firm, David R. Payne, PA, served as closing attorney for the loan.

45. In connection with his application for this loan, PAYNE submitted substantially the same false financial information as he submitted to PCB in January 2009. Once more, that means PAYNE made numerous material misrepresentations to the bank with respect to his financial condition, as described in Paragraph 35.

46. Additionally, PAYNE failed to disclose as a liability the $735,000 loan secured from PCB on or about January 20, 2009, as described in Paragraphs 30 through 37.

47. PAYNE's false statements and omissions to MFBT were material to MFBT's decision to approve and disburse the May 22, 2009, loan.

48. PAYNE intended to defraud MFBT in connection with the May 22, 2009, loan by materially misrepresenting his financial condition.

### C. Bank of Asheville Loan

49. On or about August 27, 2009, PAYNE, acting through his corporate entity Provision 08, LLC, secured a loan for approximately $522,000 from BOA using Lot 82 of the Properties as collateral. PAYNE himself acted as closing attorney for the loan.

50. PAYNE had previously encumbered Lot 82 on at least two occasions, and these prior encumbrances were timely recorded with the Buncombe County Register of Deeds:

a. On or about April 3, 2009, Provision 08, LLC, had used Lots 77 and 82 of the Properties to secure a $350k loan from Mountain Mortgage, Inc.

b. On or about July 1, 2009, Provision 08, LLC, had obtained an additional $100k loan from J.P. and K.J., secured by Lot 82 of the Properties.

51. BOA made approval of the loan expressly conditional on BOA being in first position with respect to the collateral, and PAYNE represented throughout the loan application process that it would be. All of the loan documents memorialized the parties' understanding. For example:

a. The loan commitment letter provided, "This loan will be secured by a 1st lien Deed of Trust on Lot #82, [of the Properties.]"

b. With respect to title insurance, the loan commitment letter further provided, "Exceptions to fee simple title shall be limited to current year's taxes not yet due and payable, normal utility easements and rights-of-way."

c. The BOA credit analysis memorandum notes that the collateral for the loan would be a "1st lien Deed of Trust on Lot #82[.]"

52. PAYNE was able to deceive BOA about its status as the first lien on Lot 82 because PAYNE himself acted as the closing attorney for the loan, in addition to his status as the sole owner of the borrower, Provision 08, LLC. As closing attorney, PAYNE himself was responsible for the title search.

53. PAYNE, acting as closing attorney, did list the two prior recorded encumbrances as exceptions on the title insurance policy, inconsistent with BOA's instructions, but did not notify BOA of the exceptions. BOA did not learn until April 2010 that it had never been in first position.

54. In addition to defrauding BOA with respect to lien position, PAYNE provided BOA with substantially the same false financial information that he provided with respect to all of the preceding loans. As was the case with the other Banks, PAYNE made several material misrepresentations, as described in Paragraph 35.

55. PAYNE also failed to disclose the new liabilities he had incurred in connection with the $735,000 and $100,000 loans he obtained from PCB, as described in Paragraphs 29 through 43, and the $250,000 loan he obtained from MFBT, as described in Paragraphs 44 through 48.

56. PAYNE's false statements and omissions to BOA were material to BOA's decision to approve and disburse the August 22, 2009, loan.

57. PAYNE intended to defraud BOA by providing it with materially false information about his financial condition and by concealing material information about the status of the collateral during the loan application process.

## V. Federal Law Violations

## COUNTS ONE THROUGH FOUR
**Bank Fraud**
**18 U.S.C. § 1344**

58. Paragraphs 1 through 57 are re-alleged and incorporated as though fully set forth herein.

59. On or about the dates and in the counties set forth below, within the Western District of North Carolina, and elsewhere, the defendant,

**DAVID R. PAYNE**

did knowingly, unlawfully, and with intent to defraud, execute and attempt to execute schemes and artifices to defraud and to obtain money, funds, and property owned by and under the custody and control of financial institutions (as that term is defined in Title 18, United States Code, Section 20), that is, the banks set forth below, by means of materially false and fraudulent pretenses and representations, and by concealment of material facts:

| Count | On or About | County | Victim | Loan Amount |
|---|---|---|---|---|
| ONE | 1/20/2009 | Buncombe | Pisgah Community Bank | $735,000 |
| TWO | 5/22/2009 | Henderson | Mountain First Bank & Trust | $250,000 |
| THREE | 6/22/2009 | Buncombe | Pisgah Community Bank | $100,000 |
| FOUR | 8/27/2009 | Buncombe | Bank of Asheville | $522,000 |

60. All in violation of Title 18, United States Code, Section 1344.

**COUNT FIVE**
**False Statements to a Bank**
**18 U.S.C. § 1014**
**(PCB Loan for $735,000)**

61. Paragraphs 1 through 57 are re-alleged and incorporated as though fully set forth herein.

62. On or about January 20, 2009, in Buncombe County, within the Western District of North Carolina, and elsewhere, the defendant,

**DAVID R. PAYNE**

did knowingly make false statements for the purpose of influencing an institution the accounts of which were then insured by the Federal Deposit Insurance Corporation, that is, Pisgah Community Bank, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan, in that:

a. PAYNE told Pisgah Community Bank loan officer D.S. and PCB that PAYNE acquired the Properties unencumbered from J.E. as a gift in recognition for legal services rendered; when, in truth and fact, as PAYNE well knew, PAYNE had acquired the Properties from J.E. by promising to pay $4.38 million for the Properties in monthly installments over the course of approximately thirty years, and that the Properties were subject to "springing deeds."

b. PAYNE provided financial information that omitted any personal debt to NC4Cs; when, in truth and fact, as PAYNE well knew, PAYNE owed a personal debt to NC4Cs in an amount close to $800,000.

63. All in violation of Title 18, United States Code, Section 1014.

## COUNT SIX
**False Statement to a Bank**
**18 U.S.C. § 1014**
**(MFBT Loan for $250,000)**

64. Paragraphs 1 through 57 are re-alleged and incorporated as though fully set forth herein.

65. On or about May 22, 2009, in Henderson County, within the Western District of North Carolina, and elsewhere, the defendant,

**DAVID R. PAYNE**

did knowingly make false statements for the purpose of influencing an institution the accounts of which were then insured by the Federal Deposit Insurance Corporation, that is, Mountain First Bank & Trust, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan, in that:

a. PAYNE provided financial information omitting his debt associated with the Properties; when, in truth and fact, as PAYNE well knew, PAYNE owed a debt to J.E. and J.E.'s heirs of approximately $4.38 million in connection with the transfer of the Properties, and that the Properties were subject to "springing deeds."

b. PAYNE provided financial information that omitted any personal debt to NC4Cs; when, in truth and fact, as PAYNE well knew, PAYNE owed a personal debt to NC4Cs in an amount close to $800,000.

c. PAYNE failed to disclose to MFBT as a liability the $735,000 loan he had taken out from PCB on or about January 20, 2009; when, in truth and fact, as PAYNE well knew, PAYNE had incurred this new liability.

66. All in violation of Title 18, United States Code, Section 1014.

**COUNT SEVEN**
**False Statement to a Bank**
**18 U.S.C. § 1014**
**(PCB Loans for $100,000)**

67. Paragraphs 1 through 57 are re-alleged and incorporated as though fully set forth herein.

68. On or about June 22, 2009, in Buncombe County, within the Western District of North Carolina, and elsewhere, the defendant,

**DAVID R. PAYNE**

did knowingly make false statements for the purpose of influencing an institution the accounts of which were then insured by the Federal Deposit Insurance Corporation, that is, Pisgah Community Bank, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan, in that:

a. PAYNE failed to correct the previous false financial information he had provided to Pisgah Community Bank, as described in COUNT FIVE; when, in truth and fact, as PAYNE well knew, that previous financial information understated PAYNE's liabilities by millions of dollars.

b. PAYNE failed to disclose the $250,000 liability to MFBT that PAYNE incurred on or about May 22, 2009; when, in truth and fact, as PAYNE well knew, PAYNE had incurred this new liability.

69. All in violation of Title 18, United States Code, Section 1014.

**COUNT EIGHT**
**False Statement to a Bank**
**18 U.S.C. § 1014**
**(BOA Loan for $522,000)**

70. Paragraphs 1 through 57 are re-alleged and incorporated as though fully set forth herein.

71. On or about August 27, 2009, in Buncombe County, within the Western District of North Carolina, and elsewhere, the defendant,

**DAVID R. PAYNE**

did knowingly make false statements for the purpose of influencing an institution the accounts of which were then insured by the Federal Deposit Insurance Corporation, that is, Bank of Asheville, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan, in that:

a. PAYNE provided financial information omitting his debt associated with the Properties; when, in truth and fact, as PAYNE well knew, PAYNE owed a debt to J.E. and J.E.'s heirs of approximately $4.38 million in connection with the transfer of the Properties, and the Properties were subject to "springing deeds."

b. PAYNE provided financial information that omitted any personal debt to NC4Cs; when, in truth and fact, as PAYNE well knew, PAYNE owed a personal debt to NC4Cs in an amount close to $800,000.

c. PAYNE failed to disclose to BOA as a liability the $735,000 loan he had taken out from PCB on or about January 20, 2009; when, in truth and fact, as PAYNE well knew, PAYNE had incurred this new liability.

d. PAYNE failed to disclose to BOA as a liability the $250,000 loan he had taken out from MFBT on or about May 22, 2009; when, in truth and fact, as PAYNE well knew, PAYNE had incurred this new liability.

e. PAYNE failed to disclose to BOA as a liability the $100,000 in loans he had taken out from PCB on or about June 22, 2009; when, in truth and fact, as PAYNE well knew, PAYNE had incurred this new liability.

f. PAYNE misrepresented to BOA that the bank would have a first position lien on Lot 82; when, in truth and fact, as PAYNE well knew, BOA only had a third position lien on Lot 82.

72. All in violation of Title 18, United States Code, Section 1014.

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The Grand Jury finds that the following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in this Bill of Indictment; and

b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant(s) to the extent of the value of the property described in (a).

The following property is subject to forfeiture on one or more of the grounds stated above:

a. A forfeiture money judgment in the amount of at least $1,607,000, such amount constituting the proceeds of the violations set forth in this Bill of Indictment.

A TRUE BILL:

Foreperson

JILL WESTMORELAND ROSE
UNITED STATES ATTORNEY

DANIEL V. BRADLEY
ASSISTANT UNITED STATES ATTORNEY

DON GAST
ASSISTANT UNITED STATES ATTORNEY